753 So.2d 958 (2000)
STATE of Louisiana, Appellee,
v.
Levelle TOLLIVER, Appellant.
No. 32,859-KA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 2000.
*960 Louisiana Appellate Project by J. Wilson Rambo, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Stephen T. Sylvester, Asst. Dist. Atty., Counsel for Appellee.
Before NORRIS, C.J., and BROWN and STEWART, JJ.
STEWART, J.
The state charged the defendant, Levelle Tolliver, with second degree murder, a violation of La. R.S. 14:30.1. The jury rendered a unanimous verdict of guilty. As such, the trial court imposed a sentence of life imprisonment without benefit of probation, parole or suspension of sentence. The defendant now appeals his conviction and sentence, challenging the sufficiency of evidence, the excessiveness of the sentence, the failure of the trial court to wait the requisite time frame between the denial of motions for new trial and post-verdict judgment of acquittal and sentencing, and the dismissal of two jurors who slept during testimony. We hereby affirm the defendant's conviction and sentence.

FACTS/PROCEDURAL HISTORY
On August 21, 1993, at about 3:48 a.m., Todd Crockett of the Monroe City Police *961 Department responded to a call about a shooting that had occurred in front of a residence at 1012 South Third Street. Patrick Johnson, the victim, had been shot in the head. When Crockett arrived at the residence, he saw the victim lying in the driveway near a car, unconscious and bleeding. Crockett noticed that there was blood spatter or brain spatter on the windshield of the car.
Several witnesses were present at the scene when the shooting occurred. Kenneth Franklin stated that he arrived in the area of the shooting a few minutes before the victim was shot. When he arrived, a dice game was just finishing. According to Franklin, a couple of minutes later the victim tried to leave. However, he was prevented from doing so by Charles Sumler and Timothy Shaw, both of whom were armed. Sumler and Shaw each had a gun drawn on the victim. Franklin testified, "... they were-they had guns, but they didn't have no clips in them. They just kept clicking ..." Franklin believed that Sumler and Shaw were trying to rob the victim of his dice game winnings. Suddenly, the defendant left the porch, walked around the car and shot the victim in the back of his head. Franklin was standing just a few feet from the victim when the victim was shot.
Michael Cooper testified that he saw the defendant shoot the victim in the back of the head. Cooper also believed that Shaw and Sumler were trying to rob the victim that night. He heard Sumler tell the victim to "give it up."
Stormy Moore, the defendant's former girlfriend, stated that she was at her house on the night that the victim was shot. When the defendant came to her house, the first thing he said was, "Baby, I shot him." Sometime after the night of the shooting, Moore and the defendant saw something about the victim's death on the news. Moore stated that the defendant responded to the news program by indicating that he did not mean to kill the victim.
Furthermore, Mario Moore, Stormy Moore's sister, who was living with Stormy Moore at the time of the shooting, stated that on Saturday, August 21, early in the morning, Michael Cooper and Timothy Shaw came to her house. In Mario Moore's presence, Shaw and the defendant made several statements concerning the incident in question. Shaw indicated that he was trying to get his money back from the victim. Shaw stated that he had tried to fire his gun, but it just clicked and did not fire. Mario Moore also stated that the defendant said he had shot someone.
Detective William Webb, who was also on duty at the scene of the shooting that night, contacted Willie Edwards and Latora Williams. Edwards and Williams both indicated that they were present when the shooting occurred. Williams informed Webb that the shooter went by the nickname of "Black." Additionally, Williams stated that he thought "Black's" first name was Levelle. Edwards provided very similar information to Webb.
Webb then turned to the police department's master name list which is kept on a computer. The master list revealed only one individual, Levelle Tolliver, with the nickname of "Black" who also had the first name of Levelle. Webb then put together a photographic line-up which contained Tolliver's picture.
Webb showed the photo line-up to six individuals whom he had identified as witnesses. Latora Williams, Willie Edwards, Kenneth Franklin, Charles Sumler, Timothy Shaw, and Michael Cooper all identified the defendant as the individual who shot the victim on the night of the incident.
On September 14, 1993, the defendant, Sumler and Shaw were charged by bill of indictment with second degree murder. The following day the defendant entered a plea of not guilty. On April 20, 1994, the defendant filed a motion to change his plea to add the defense of not guilty by reason of insanity. On May 6, 1994, the defendant filed a motion to stay all proceedings on the basis that he was mentally incapable *962 and requested the appointment of a sanity commission.
In 1997, a hearing was held and the defendant was found mentally competent. The jury trial commenced in October 1998. The defendant was found guilty of second degree murder, and he was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence.

DISCUSSION

Insufficiency of Evidence
By his first assignments of error, the defendant contends that the trial court erred in denying his motion for new trial on the basis that the evidence presented in trial was insufficient to have resulted in a verdict of guilty of the crime of second degree murder. The defendant further contends that the trial court erred in denying his motion for a post-judgment verdict of acquittal because the evidence presented at trial was insufficient to prove beyond a reasonable doubt that the defendant was guilty of each element of the crime alleged. The defendant asserts through these assignments of error that the evidence was not sufficient to establish that he was the shooter. In the alternative, he contends that he was so highly intoxicated that he did not have the requisite specific intent necessary to be found guilty of second degree murder.
La.C.Cr.P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence, for example, that the evidence was insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App.2d Cir.6/22/94), 639 So.2d 391, citing, Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir.1993), writ denied, 93-2899 (La.2/11/94), 634 So.2d 372.
La.C.Cr.P. art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in the light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
In State v. Hearold, 603 So.2d 731 (La. 1992), the Louisiana Supreme Court stated that when issues of both sufficiency of the evidence and trial errors are raised on appeal, the reviewing court should first determine the sufficiency of the evidence. The proper standard for appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. The facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
La. R.S. 14:30.1 provides, in pertinent part:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or

*963 (2)(a) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
In the instant case, one of the defendant's contentions is that the evidence was not sufficient to establish that he shot the victim. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La.App.2d Cir.5/8/96), 674 So.2d 1108.
Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428; State v. Miller, 561 So.2d 892 (La. App.2d Cir.5/9/90), writ denied, 566 So.2d 983 (La.1990); State v. Royal, 527 So.2d 1083 (La.App. 1st Cir.1988), writ denied, 533 So.2d 15 (La.1988).
It is not the function of the appellate court to evaluate the credibility of the witnesses. State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984), citing, State v. Richardson, 425 So.2d 1228 (La.1983). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir. 1986), writ denied, 499 So.2d 83 (La.1987).
At the trial in the instant case, Kenneth Franklin and Michael Cooper both testified that they saw the defendant shoot the victim. However, we also consider the fact that both of these witnesses are in jail, Franklin for distribution and Cooper for manslaughter. The Moore sisters both indicated that they heard the defendant state that he shot someone. Marlo Moore previously denied hearing this statement because she said she was trying to "protect her family." Furthermore, the record indicates that the defendant told Stormy Moore that he did not mean to kill the victim. Timothy Shaw and Charles Sumler each gave statements after the shooting that the defendant pulled the trigger. However, during the trial they denied the accuracy of their previous statements. Instead, at trial they testified that they are uncertain of who actually shot the victim, and that if the defendant was the shooter, it was accidental. Clearly, the jury made a credibility determination and was well within its right to accept testimony of some witnesses over others. We believe that the evidence was sufficient to prove that the defendant killed the victim.
The defendant also contends that he was so highly intoxicated with "wet daddies" (PCP, marijuana, and formaldehyde) that he did not have the requisite specific intent necessary to be found guilty of second degree murder. The determination of whether the requisite intent is present is a question for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982). Furthermore, the factual determination concerning conflicting testimony will not be disturbed on review unless it is clearly contrary to the evidence. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Taylor, 621 So.2d 141 (La.App. 2d Cir. 1993), writ denied, 93-2054 (La.2/11/94), 634 So.2d 371.
*964 Conflicting testimony was presented as to whether the defendant was so intoxicated that he could not form specific intent. On the one hand, Shaw testified that the defendant had consumed a large quantity of malt liquor and smoked marijuana-laced PCP on the night of the shooting. However, Shaw did not know how much marijuana the defendant had smoked. On the other hand, Franklin indicated that the defendant was not staggering and appeared to be in control of himself. Based on the evidence, we agree with the jury's determination that the defendant was not so intoxicated that he could not form specific intent. These assignments of error lack merit.

Improper Dismissal of Jurors
By his next assignment of error, the defendant argues that the trial court erred in excusing two jurors from the jury panel who allegedly slept at the end of the trial. We believe that the defendant's allegation is incorrect. The evidence in the record establishes that only one juror, Thomas Hemphill, was dismissed at the end of the trial for sleeping, and this was at the request of the defense. The other juror was an alternate who fell asleep at the beginning of the trial during the state's case, and the defense did not object. Since there was no contemporaneous objection, as required by La.C.Cr.P. art. 841(A), this objection cannot be brought on appeal. Additionally, the dismissal was not in error. See State v. Cass, 356 So.2d 396 (La.1977) and State v. Womack, 592 So.2d 872 (La.App.2d Cir.1991), writ denied, 600 So.2d 675 (La.1992). This assignment of error lacks merit.

Excessive Sentence
By his next assignments of error, the defendant challenges his sentence as excessive and contends that the trial court erred in not articulating reasons for the punishment under La.C.Cr.P. art. 894.1. The defendant was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. The defendant asserts that the trial court failed to comply with the requirements of La. C.Cr.P. art. 894.1 in imposing his sentences. However, the defendant's motion to reconsider sentence contained no allegations related to La.C.Cr.P. art. 894.1.
The defendant must present arguments to the trial court that he wishes to preserve on appeal. When the defendant fails to present his specific arguments, he is relegated to having the appellate court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164. We find that the defendant cannot now complain about the court's alleged failure to comply with La. C.Cr.P. art. 894.1.
Even if the defendant had listed La.C.Cr.P. art. 894.1 as a ground in his motion, failure to articulate reasons for a sentence when imposing a mandatory sentence is normally not error. When the court has no discretion in sentencing, to require a listing of the factors considered would be an exercise in futility. State v. Koon, 31,177 (La.App.2d Cir.2/24/99), 730 So.2d 503; State v. Williams, 445 So.2d 1264 (La.App. 3d Cir.1984), writ denied, 449 So.2d 1346 (La.1984).
Whether the sentence imposed is excessive depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864. The minimum sentence compelled by Louisiana law is *965 presumed not to be excessive. State v. Juarez, 624 So.2d 26 (La.App. 2d Cir. 1993). La. R.S. 14:30.1 mandates a sentence of life imprisonment at hard labor without benefit. We find that the trial court was not required to articulate reasons. Based on the circumstances of this case, the life sentence imposed upon the defendant is not excessive. This assignment of error lacks merit.

Failure to Secure a Waiver of Delay
By his next assignment of error, the defendant contends that the trial court erred by failing to secure a waiver of the delay from the defendant prior to the imposition of the sentence as set forth in La.C.Cr.P. art. 873. Here, the defendant challenges the trial court's failure to wait 24 hours between the denial of the defendant's motion for new trial and post-verdict judgment of acquittal before imposing sentence. However, in his appellate brief, the defendant does not assert that he suffered any prejudice as a result of the immediate sentencing. Since the defendant failed to show actual prejudice, we believe that in this case the trial court's failure to wait the requisite 24 hours before imposing sentence constituted harmless error. See State v. Wilson, 469 So.2d 1087 (La.App. 2d Cir.1985), writ denied, 475 So.2d 778 (La.1985). This assignment of error also lacks merit.

CONCLUSION
For the reasons we have just discussed, we hereby affirm the defendant's conviction and sentence.
AFFIRMED.