BROWN, Chief Judge.
| defendant, Trivenskey Odom, was indicted for the crime of armed robbery that occurred on July 17, 2011, in Shreveport, Louisiana. Odom waived a jury, choosing a bench trial. The judge found defendant guilty as charged and sentenced him to 65 years’ imprisonment at hard labor without the benefit of probation, parole or suspension of sentence. Defendant has appealed, urging that the evidence was insufficient to support his conviction and that his sentence is excessive. For the reasons set forth below, defendant’s conviction and sentence are affirmed.

Sufficiency of the Evidence

The state’s first witness was the victim, Robert Booker. He testified that on July 17, 2011, around 3:30 a.m., his home at 252 East 74th Street in the Cedar Grove area of Shreveport was burglarized. His burglar alarm went off while he was not home, and the security monitoring company alerted police. Later that morning, between 6:00 a.m. and 7:00 a.m., Booker and his sister-in-law, Tiranisha West, were standing outside his home talking about how to further protect his property. During that time, Booker stated that he had approximately $1,800 which he was going to use to purchase burglar bars for his windows.
While they were standing outside, Ms. West noticed a blue Dodge Intrepid riding up and down the street, occasionally slowing down. According to Booker, Ms. West indicated that perhaps the people in the car were the ones who had broken into his home earlier that morning. Booker saw the car stop at the corner of Henderson and East 74th (one-half block from the victim’s home). Minutes later, two guys approached Booker from |2the side of the house with weapons drawn. Ms. West took off running and told Booker to run as well; however, Booker, a transplant recipient, could not run since the two men had him at gunpoint by that time.
Booker testified that one of the men, later identified as defendant, the “bright skin guy with a mask on,” demanded money, swung at him and then hit him in the head with the gun. The other guy was taller with “dreads or some type of long dark hair hanging from under the ski mask.” Booker further testified that he could only see the robbers’ eyes and mouth because of the masks they were wearing. He noticed that the robber who hit him was wearing a green shirt with a white shirt underneath, light color faded denim jeans and “dirty-looking” Air Max Nike tennis shoes.
From the testimony of Booker and Sergeant Suzanne Gallier, the following events which led to Odom’s arrest occurred next. Immediately after the robbery, Booker testified that he got in his car and started proceeding east on 74th Street. At that time, Sgt. Gallier was in the process of investigating another burglary at the corner of 74th Street and Fairfield. Sergeant Gallier stated that she saw Booker’s white vehicle turn north on Fairfield and then immediately turn back west on 73rd Street proceeding very quickly. Shortly thereaf *63 ter, Sgt. Gallier and another officer heard a gunshot to the west and the officers begin their response by going to their patrol cars. At that moment, Sgt. Gallier reports Booker’s return from 73rd Street in his vehicle, yelling to the officers that he had been robbed.
In the meantime, according to Booker’s account of the gunshot, he had traveled down 73rd Street to the corner of 73rd and Henderson. There, he observed the same two bandits still in masks waiting in the alley for the return of the blue Intrepid which was moving in their direction. Referring |3to the driver of the Intrepid, Booker’s testimony states: “When he seen me, he was hesitating. He wouldn’t come.” Booker was trying to read the license plate on the intrepid when one of the robbers fired the gun. In Booker’s retreat after the gunshot, he apparently was able to find Ms. West on 73rd Street and get her into his vehicle.
According to Sgt. Gallier, upon Booker’s report of the robbery and in response to the gunshot, she started in her patrol car west on 73rd Street while the other officers drove west on 74th Street. When Sgt. Gallier turned east onto 73rd Street, she saw two black males running west in the alley. She then radioed other officers, including the K-9 unit, and they set up a perimeter. Sergeant Gallier testified that as she continued west on East 73rd, she saw defendant running west toward Southern. This would be about a block from Booker’s house. She raced ahead of the runner and parked her car near Southern Avenue. She ran back toward defendant and apprehended him. Sergeant Gallier testified that when she apprehended the defendant, he had a black skull cap, commonly referred to as a do-rag, in his pants pocket.
Sergeant Gallier then left defendant in Officer Moss’s patrol unit. She picked up Booker and drove him back to identify the suspect. She testified that Booker positively identified defendant as the person who had just robbed him. Sergeant Gallier also testified that they located a Dodge Intrepid which had been abandoned at a dead end street in the 100 block of West 77th Street. The vehicle, which had been stolen, was abandoned 7/10th of a mile from Booker’s house. Booker identified it as the vehicle that he had seen being driven slowly up and down his street that morning just prior |4to the robbery. On cross-examination, Sgt. Gallier testified that she could see Booker’s house from the spot she apprehended defendant.
Corporal Susan Anderson of the Shreveport Police Department was the state’s next witness. Corporal Anderson corroborated the testimony of Robert Booker and Tiranisha West. Corporal Anderson testified that when she arrived, she began canvassing the scene for evidence. She found what appeared to be fresh shoe prints. Once defendant was in custody, Cpl. Anderson photographed the tread of defendant’s shoes. She opined that his shoes had the same type of tread as the prints found at the scene. However, Cpl. Anderson testified that she did not measure the shoe print or make a casting. Corporal Anderson also found a pocket knife and do-rag on defendant’s person. She indicated that the “do-rag was almost see through.”
Corporal Josh Feliciano with the SPD robbery detectives’ office testified that he interviewed the defendant. Prior to that, he interviewed the victim, Robert Booker, and his sister-in-law, Ms. West. Booker described the robber who pistol-whipped him and told Cpl. Feliciano that the man didn’t use slang but was very well-spoken. After he was advised of his Miranda rights, defendant was hesitant to make a statement. However, sometime later, de *64 fendant changed his mind. Defendant told Cpl. Feliciano that during the early morning of July 17, 2011, he had a friend pick him up from his mother’s house. They went to another friend’s house in Cedar Grove. However, defendant was not able to provide the friend’s name or address. Defendant further advised that after hanging out for a few hours, he and the friend he rode with began arguing about a female. Defendant left the house walking on East 75th Street. While walking, he saw someone else he knew, and they started to fight. Defendant told Cpl. Feliciano that he |5took off running when he heard police sirens. At that point, defendant indicated that he did not want to continue the interview, so Cpl. Feliciano ended the interrogation. Corporal Feliciano testified that he later learned during the course of his investigation that police sirens were not activated by the responding officers that night. On cross-examination, Cpl. Feliciano testified that neither a gun nor the money taken from the victim was ever recovered. On redirect, Cpl. Feliciano noted that during the interview, he found defendant to be very well-spoken. Following Cpl. Feliciano’s testimony, the state rested its case in chief. The defense also rested without putting on any evidence. The trial court found defendant guilty as charged.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d 1086.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.01/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/06/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. |fiA reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App.2d Cir.05/09/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529. See also, State v. Bowie, 43,374 (La.App.2d Cir.09/24/08), 997 So.2d 36, writ denied by State v. Jackson, 08-2639 (La.05/22/09), 9 So.3d 141.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.02/13/08), 975 So.2d 753; State v. Burd, 40,480 (La. App.2d Cir.01/27/06), 921 So.2d 219, vrrit denied, 06-1083 (La.11/09/06), 941 So.2d 35.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64(A). The direct evidence presented by the state clearly proved that an armed robbery occurred. The victim positively identified defendant as the one with the gun who pistol-whipped him and took his money.
*65 Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2248, 53 L.Ed.2d 140 (1977). Even if the identification could be suggestive, it is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Thibodeaux, 98-1673 (La.09/08/99), 750 So.2d 916, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).
In Manson v. Brathwaite, supra, the U.S. Supreme Court set forth five factors to consider in determining if an identification is reliable: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.
One-on-one identifications, also known as “show-up” identifications, are not favored; however, under certain circumstances, they are admissible at trial. State v. Felton, 03-0548 (La.App.4th Cir.10/08/03), 859 So.2d 817. Such identifications have been found to be admissible when the identification occurred in close proximity to the time of the offense and the suspect is presented for immediate identification. State v. Robinson, 404 So.2d 907 (La.1981).
Viewing the evidence in a light most favorable to the prosecution, we find that the evidence adduced at trial was sufficient to convict defendant of armed robbery. Both Robert Booker, the victim, and Ms. West testified that they were outside talking and discussing that Booker was planning to buy burglar bars with the $1800 he had in his pocket. They further testified that during their conversation, they saw a Dodge Intrepid riding slowly up and down the street. The car stopped at the corner which was one-half a block from them. Approximately 15 minutes after they noticed that the vehicle was gone, two men wearing masks ran from the side of Booker’s house and robbed Booker at gunpoint. Booker was face-to-face with the shorter of the two. He observed the perpetrator’s clothes, speech, size and col- or. Booker ^testified that after the robbers took his $1,800 in cash, they ran off, and he immediately got in his car to find help.
Booker notified police officers who were already in the neighborhood. Shortly thereafter, Sergeant Gallier apprehended a suspect in the alley that runs behind the victim’s home. Sergeant Gallier stated that she could see the victim’s residence from the spot where she located defendant. Booker positively identified defendant, Trivenskey Odom, as the person who robbed him based upon his clothing, eyes, shape of his head and skin color. This identification was made close in proximity to the actual time of the robbery. Although the robber was wearing a mask, it was one through which Booker could still see the robber’s eyes and mouth. Furthermore, it was daylight outside, and Booker was able to view the robber’s clothing. At the time of the identification, defendant was wearing the white t-shirt that Booker had seen as well as the same jeans and tennis shoes the victim had reported seeing on the man who robbed him.
Sergeant Gallier testified that when she apprehended defendant, he had a black skull cap or do-rag in his pocket. Corporal Anderson testified about the black do-rag, noting that it was almost see through. Corporal Anderson also found a fresh shoe print at the scene. After reviewing the tread on defendant’s shoes, she believed it to be the same tread as that of the shoe- *66 prints found at the scene. Lastly, Corporal Feliciano testified that when he interviewed defendant, he (defendant) stated that, around the time of the robbery, he was in the Cedar Grove area fighting with someone he knew; however, he could not identify that person. Further, defendant told Corporal Feliciano he ran because he heard police sirens. However, there |9were no sirens that morning as the officers searching for the robbery suspects did not activate their sirens.
The time, location, and circumstances of defendant’s arrest corroborate the victim’s identification of defendant. The evidence presented at trial demonstrated that defendant, who tried to hide his identity with a do-rag or mask, took money from Robert Booker, by force or intimidation, with the use of a firearm. The evidence was sufficient to find defendant guilty beyond a reasonable doubt of armed robbery.
This assignment of error is without merit.

Excessive Sentence

According to defendant, his 65-year sentence is nothing more than a purposeful infliction of pain and suffering considering his young age. The defense further contends that defendant could be rehabilitated and should be allowed the chance to reenter society.
La. R.S. 14:64, provides the penalty for armed robbery:
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without the benefit of parole, probation, or suspension of sentence.
The court must examine whether the sentence is too severe considering the circumstances of the case and the background of the defendant. A sentence violates La. Const., Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.01/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.01/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864.
A trial court has broad discretion to sentence within the statutory limits. State v. Guzman, 99-1528, 99-1753 (La.05/16/00), 769 So.2d 1158; State v. Dunn, 30,767 (La.App.2d Cir.06/24/98), 715 So.2d 641. Absent a showing of manifest abuse of that discretion, the appellate court may not set aside a sentence as excessive. State v. Guzman, supra.
Although defendant is a young man, there appears to be no abuse of discretion in the court’s imposition of a 65-year hard labor sentence. Prior to sentencing defendant, the trial court adequately reviewed the guidelines set forth in La. C. Cr. P. art. 894.1. Specifically, the court noted that this was a crime of violence. Not only did defendant pistol-whip the victim, Robert Booker, but he also fired shots in Booker’s direction. The court determined that defendant’s actions and his refusal to accept responsibility indicated a propensity for a life of crime.
Pursuant to La. R.S. 14:64(B), the maximum penalty exposure for this offense is 99 years at hard labor. The trial court imposed 65 years, a less than maximum sentence. Despite defendant’s youthful age, the instant conviction is his third felony conviction. As the court noted, it appeared that defendant was headed for a life of crime, and therefore, had demonstrated that he is a risk to the public. *67 Considering the above, the trial court’s imposition of the 65-year sentence is neither grossly disproportionate to the severity of the offense of armed robbery nor is it shocking to the sense of justice. State v. Smith, 01-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980).
This assignment of error is without merit.

Error Patent Review

At sentencing, the trial court did not advise defendant of the time period within which to apply for post-conviction relief. The Louisiana Supreme Court has held that La. C. Cr. P. art. 930.8(C), which requires the trial court to inform defendant of the limitations period for filing an application for post-conviction relief, is supplicatory language which does not bestow an enforceable right on an individual defendant. State ex rel. Glover v. State, 93-2330 (La.09/05/95), 660 So.2d 1189, abrogated on other grounds in State ex rel. Olivieri v. State, 00-0172 (La.02/21/01), 779 So.2d 735; State v. Hunter, 36,692 (La.App.2d Cir.12/20/02), 834 So.2d 6. This court therefore advises defendant in this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922. See State v. Pugh, 40,159 (La.App.2d Cir.09/21/05), 911 So.2d 898.
Also, the trial court imposed defendant’s sentence immediately after the denial of defendant’s motion for post verdict judgment of acquittal. There is no showing on the record that defendant waived the delay required by La. C. Cr. P. art. 873. However, he did not complain of actual prejudice, so the error appears harmless. See State v. Roberson, 40,809 (La.App.2d Cir.04/19/06), 929 So.2d 789; State v. Wilson, 469 So.2d 1087 (La.App. 2d Cir.1985), writ denied, 475 So.2d 778 (La.1985). See also State v. Moossy, 40,566 (La.App.2d Cir.03/10/06), 924 So.2d 485; State v. Drane, 36,230 (La.App.2d Cir.09/18/02), 828 So.2d 107, writ denied, 02-2619 (La.03/28/03), 840 So.2d 566.

Conclusion

For the foregoing reasons, defendant’s conviction and sentence are affirmed.
STEWART, J., dissents with reasons.