931 So.2d 409 (2006)
STATE of Louisiana, Appellee
v.
D'Marques GILL, Appellant.
No. 40,915-KA.
Court of Appeal of Louisiana, Second Circuit.
May 17, 2006.
*410 Louisiana Appellate Project, by Edward K. Bauman, Indigent Defender Board, by Jack "Buddy" Slaid, for Appellant.
D'Marques Gill, Pro se.
J. Schuyler Marvin, District Attorney, John M. Lawrence, Charles A. Smith, Assistant District Attorneys, for Appellee.
Before STEWART, DREW and LOLLEY, JJ.
STEWART, J.
The defendant, D'Marques Gill, was convicted of second degree murder. He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. He now appeals. For the reasons that follow, we affirm his conviction and sentence.

FACTS
On February 16, 2004, 19-year-old D'Marques Gill was involved in several verbal altercations at his grandfather's home with his 30-year-old uncle, Mark Oliver. Gill was trying to get his clothes and shoes back from Oliver, whom he believed had taken his possessions without permission and was attempting to sell them. Gill testified that he was scared of his uncle, and waved a gun to threaten him. Gill claimed that the gun accidentally discharged as he waved it, striking Oliver in the arm and penetrating his chest. The defense stipulated that Oliver died of a gunshot wound.
Several witnesses were present during these altercations. Gill's step-grandfather, Foster Miles, and La Miracle Gasaway, Gill's girlfriend at the time of the incident, testified that when the victim was shot, they heard the defendant say, "I'll shoot again." Gasaway also testified that when Gill came to her house after his first argument with Oliver, she heard him say that "he was going to get Mark." Gill denied the statements and testified that he had no intention to shoot Oliver, but the gun just went off.
Gill, Ms. Gasaway, and the defendant's brother took Oliver to the hospital, dropped him off, and returned home. Gill decided to go back to the hospital to check on his uncle. On his way back to the hospital, the police stopped and searched the vehicle and questioned him. With her permission, the police also searched Ms. Gasaway's residence where they recovered the gun allegedly used by the defendant to shoot Oliver.
The defendant was charged by bill of indictment with second degree murder. A trial ensued, and on February 25, 2005, a 12-person jury found him guilty as charged. On March 28, 2005, the defendant was sentenced to a mandatory life *411 sentence without benefit of probation, parole, or suspension of sentence, and remanded to hard labor. A timely motion to reconsider sentence was denied. Defendant now appeals his conviction and sentence, challenging the sufficiency of the evidence and the excessiveness of his sentence.

DISCUSSION

Sufficiency of Evidence
In State v. Hearold, 603 So.2d 731 (La. 1992), the Louisiana Supreme Court stated that when issues of both sufficiency of the evidence and trial errors are raised on appeal, the reviewing court should first determine the sufficiency of evidence.
The defendant argues that the evidence presented at trial does not support a finding of specific intent, an element necessary for a second degree murder conviction. Defendant asserts that his actions do not suggest that this was a calculated murder, nor that he had specific intent to inflict great bodily harm. Rather, the defendant asserts that he lost his composure after he unsuccessfully tried to get his clothes back from his uncle. Under these circumstances, defendant argues, the verdict should have been manslaughter. The state failed to prove beyond a reasonable doubt that he was guilty of second degree murder.
Defendant cites State v. Williams, 26,716 (La.App.2d Cir.5/10/95), 658 So.2d 703, writ denied, 95-2175 (La.2/2/96), 666 So.2d 1091, for the mitigatory factors of sudden passion or heat of blood which distinguish manslaughter from homicide. Accordingly, Gill suggests that the mitigatory factors of sudden passion or heat of blood negate the specific intent for second degree homicide. Furthermore, he asserts that the jury's request to be reinstructed on the definitions of second degree murder and manslaughter reveal their confusion in reaching the proper verdict. Gill believes that the verdict of the jury was contrary to the law and evidence, and he should have been convicted of manslaughter, not second degree murder.
The state argues that the jury obviously found the defendant's testimony unpersuasive, and resolved the issue of the credibility of his testimony against him. The state asserts that the evidence presented proves that Gill shot and killed the victim, and the evidence was sufficient to support the conviction of second degree murder.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Second degree murder is "the killing of a human being: (1) When the *412 offender has a specific intent to kill or to inflict great bodily harm." See La. R.S. 14:30.1. In the instant case, Foster Miles and LaMiracle Gasaway both testified that the defendant said, "I'll shoot again," after firing at shot a Oliver. In addition, Ms. Gasaway testified that she heard Gill say, "I'm going to get Mark." Although Gill denied making these statements and testified that he did not mean to shoot his uncle, the jury chose not to believe his testimony. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
Although the jury was reinstructed as to the definitions of manslaughter and second degree murder, this is not dispositive. The record does not reflect any confusion on the part of the jury. The jury did not find that manslaughter was appropriate in light of the evidence provided. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, supra.
After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. There was sufficient evidence presented at trial for the jury to believe that the defendant had the specific intent necessary to convict him of second degree murder. This assignment is therefore without merit.

Excessive Sentence
The defendant argues that the trial court believed that the applicable Louisiana Code of Criminal Procedure statute only allowed for one sentence to be imposed for second degree murder and that there was no authority for deviating from this sentence. He contends that the trial court could deviate from the statute and should have taken into consideration defendant's age, educational level, family, or criminal history as mitigating factors when the sentence was imposed.
Gill cites State v. Bonanno, 384 So.2d 355 (La.1980), to substantiate his claim that a sentence is constitutionally excessive, in violation of La. Const. art. 1, § 20 (1974), if it is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. Therefore, defendant argues that the statutory provision of La. R.S. 14:30.1(B) must yield in this instance to the constitutional prohibition against excessive punishment and that under these circumstances, a sentence of life imprisonment is cruel and excessive.
The state argues that La. R.S. 14:30(B) provides that, "[w]hoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." The state argues that the statute provides a mandatory sentence, and the trial court is not required to list any factors. State v. Tolliver, 32,859 (La.App.2d Cir.3/1/00), 753 So.2d 958, 964, writ denied, 2000-2028 (La.3/30/01), 788 So.2d 440.
Since defendant's motion for reconsideration merely alleged that the sentence is excessive, under State v. Mims, 619 So.2d 1059 (La.1993), he is relegated to having the appellate court consider the bare claim of excessiveness. This bare claim preserves only a claim of constitutional excessiveness. State v. McEachern, 624 So.2d 43 (La.App.2d Cir.1993). Constitutional *413 review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992); State v. White, 37,815 (La.App.2d Cir.12/17/03), 862 So.2d 1123.
Where there is a constitutional mandatory sentence, there is no need for the trial court to justify, under Article 894.1, a sentence it is legally required to impose. State v. Koon, 31,177 (La.App.2d Cir.2/24/99), 730 So.2d 503; State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992). To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Lindsey, 99-3302 (La.10/17/00), 770 So.2d 339.
Gill asserts that the trial court failed to take into consideration his age, educational level, family, or criminal history as mitigating factors when the sentence was imposed. However, the defendant's motion to reconsider sentence contained no allegations with respect to this argument. The defendant must present arguments to the trial court that he wishes to preserve on appeal. The defendant is therefore relegated to having the appellate court consider the bare claim of excessiveness. State v. Mims, supra. The defendant cannot now complain about the trial court's alleged failure to articulate reasons, or that the trial court could have deviated from the mandatory sentence imposed.
Even if the defendant had preserved these arguments for appeal, where there is a constitutional mandatory sentence, there is no need for the trial court to justify, under Article 894.1, a sentence it is legally required to impose. In addition, to rebut the presumption that the mandatory sentence is constitutional, the defendant must clearly and convincingly show that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. In this case, the defendant has not sufficiently demonstrated he is the "exceptional" defendant for which downward departure from the statutory minimum sentence is required.
Furthermore, arguments that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment contained in the Louisiana constitution have been repeatedly rejected. State v. Parker, 416 So.2d 545 (La.1982); State v. Brooks, 350 So.2d 1174 (La.1977); State v. Thornton, 36,757 (La.App.2d Cir.01/29/03), 836 So.2d 1235, writ denied, XXXX-XXXX (La.10/31/03), 857 So.2d 474. The jury believed that the defendant had the specific intent to kill or to inflict great bodily harm, and accordingly convicted him of second degree murder. The sentence is not illegal, grossly disproportionate to the severity of the offense nor shocking to the sense of justice. This assignment is therefore without merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.