964 So.2d 435 (2007)
Claude PRINE, et al., Plaintiffs-Applicants
v.
Donovan W. BAILEY, M.D., Defendant-Respondent.
No. 42,282-CW.
Court of Appeal of Louisiana, Second Circuit.
August 15, 2007.
*437 Nelson & Hammons, by Cornell Flournoy John L. Hammons, Shreveport, for Applicants.
McNew, King, Mills, Burch & Landry, by Brady D. King, II, for Respondent.
Before STEWART, GASKINS and CARAWAY, JJ.
GASKINS, J.
The plaintiffs filed a writ application objecting to a trial court judgment granting a motion to compel discovery of their medical records in this wrongful death and survival action arising from the death of the plaintiffs' wife and mother. This court granted the writ application and docketed the matter for decision. For the following reasons, we affirm in part and reverse in part the trial court judgment and remand for further proceedings.

FACTS
The plaintiffs in this case are Claude Prine, the husband of the decedent, Mary Prine, and their two adult children, Toni Prine Shumate and David Prine. The plaintiffs allege that the defendant, Dr. Donovan W. Bailey, was Mary's primary care physician and that he breached the standard of care by failing to recommend colorectal cancer screening for her when she reached age 50. In June 2001, Mary died of complications of colon cancer at the age of 58. After submitting the claim to a medical review panel, the plaintiffs filed this wrongful death and survival action on September 16, 2005. They sought damages for Mary's physical pain and suffering, mental anguish and distress, residual disability, substantial medical bills, fear, loss of the quality of life, loss of society with her family, loss of the opportunity to have avoided the development of colorectal cancer, and ultimately, death.
The plaintiffs also claimed that they suffered the tragic loss of their wife and mother, loss of love and affection, loss of society, grief, mental anguish, medical bills and funeral expenses.
During the course of discovery, an issue developed as to whether Dr. Bailey was Mary's primary care physician. Deposition testimony indicated that, if Dr. Bailey was Mary's primary care physician, he had a duty to recommend colorectal cancer screening for her at age 50. The defendant denies that he was Mary's primary care physician. The plaintiffs represented that the whole family saw Dr. Bailey for medical treatment and considered him to be their primary care physician. Therefore, they contended that Mary must also have considered Dr. Bailey to be her primary care physician.
In November 2006, the defendant filed a motion to compel discovery of all of the plaintiffs' medical records. Dr. Bailey argued that, since the plaintiffs raised the issue of whether he was Mary's primary care physician and the plaintiffs had stated that they considered him to fulfill that function for them, their medical records would be probative of that issue. According to Dr. Bailey, the medical records are necessary to show whether some other doctor was actually the primary care physician, *438 with the duty to recommend colorectal screening for Mary.
Dr. Bailey also urged that since the plaintiffs claimed mental anguish, the medical records were necessary to show whether they suffered any damages as a result of Mary's death. Dr. Bailey maintained that the trial court should either allow discovery or preclude the plaintiffs from attempting to introduce evidence of opinions, thoughts, or feelings concerning their relationship with him and discussion of their treatment by him.
The plaintiffs did not object to discovery of Mary's medical records. However, they filed an opposition to the motion to compel discovery, asserting that Dr. Bailey wanted the entirety of their medical records for a fishing expedition which had nothing to do with whether he breached the applicable standard of care for Mary. The plaintiffs argued that their action for wrongful death does not allow the defendant access to their confidential medical records.
The plaintiffs specifically objected to the following interrogatories and requests for production of documents:
Interrogatory No. 13:
State the name, address and the specialty or area of practice of each physician, chiropractor, physical therapist, nurse, mental health care provider or any other health care provider which has examined or treated you for any reason at any time. For each person identified, please specify the dates or periods of treatment, the reason for treatment, and outcome.
Interrogatory No. 14:
State the name and address of all hospitals, clinics, or other health care institutions to which you have been admitted or received health care from at any time for any reason.
Request for Production No. 2.
Produce any and all medical reports, records, bills, x-rays, diagnostic test results, documents, or tangible items concerning or touching upon any health care provider identified in your answer to Interrogatories Number 13 and 14.
Request for Production No. 3.
Execute the attached Medical Authorization attached hereto for each health care provider identified in your answer to Interrogatories No. 13 and 14.
Interrogatory No. 15.
Describe in detail any and all mental, emotional, bodily or physical injuries or damages you contend were caused by the alleged medical negligence or malpractice forming the basis of this lawsuit.[1]
A hearing on the motion to compel was held on January 8, 2007. Counsel for Dr. Bailey urged that while the standard of care requires that a primary care physician order colorectal screening when a patient reaches the age of 50, if Dr. Bailey was not Mary's primary care physician, he had no such obligation. Dr. Bailey's lawyer explained that he had not filed a motion in limine to stop the plaintiffs from testifying that Dr. Bailey was their primary care physician, but said that some of his concerns would be alleviated if the plaintiffs were not permitted to testify about that issue. Dr. Bailey also argued that he should be able to have the medical records to test the assertions made by the plaintiffs in their depositions regarding their professional relationship with him and to determine what mental anguish damages they had suffered.
*439 At the close of the hearing, the trial court granted the motion to compel, stating that:
My gut reaction is that the perception of the other family members is irrelevant as to whether or not Dr. Bailey was Mrs. Prine's family physician. However, I see from the way this case is developing that it is possible that it may be relevant and if so, then the information that you are trying to get through discovery, in my opinion, is discoverable. I think that there are safeguards that can be put in place to protect the privacy of the other family members and if you all cannot work that out between yourselves, then I will be glad to help you do it. But, for the  I also noted when I was preparing for this that there was no argument as to the emotional distress that they have claimed, how that would be perceived as far as your right to discover their medical records. I think that is an issue that needs to be addressed and certainly, any medical information relative to their, any treatment that they received for emotional distress that they are claiming, that certainly is discoverable. So I am going to grant your motion to compel.
The plaintiffs filed a writ application with this court. On March 2, 2007, this court granted the writ application, stayed the order to compel discovery, and docketed the matter for decision.

DISCOVERY OF PLAINTIFFS' MEDICAL RECORDS
According to Dr. Bailey, there is a dispute as to whether he was the primary care physician for the plaintiffs and the decedent and whether his care caused harm that otherwise would not have occurred. Also at issue is whether the plaintiffs suffered emotional distress as a result of Dr. Bailey's care, and if they have, the extent of their harm and injuries. Dr. Bailey states that the interrogatories requesting the plaintiffs' medical records were directed at determining whether he was, in fact, their primary care physician and the nature and extent of any mental, emotional, bodily or physical injuries which the plaintiffs contend were the result of the alleged malpractice.
The plaintiffs do not object to discovery of the medical records of the decedent. They do object to discovery of the personal medical records and history of the widower and adult children of the decedent. According to the plaintiffs, the only issue in this matter is whether Dr. Bailey had a duty to recommend colorectal screening to Mary when she reached the age of 50. The plaintiffs urge that they are not alleging that Dr. Bailey's care and treatment of Claude or his adult children caused or contributed to the damages suffered by Mary. The plaintiffs contend that their medical records are privileged and confidential and not relevant to the determination of the standard of care owed by Dr. Bailey to Mary.
The plaintiffs point out that Claude and Toni had been deposed. They did not claim that Dr. Bailey was their only physician, just that he is their primary care physician. They maintain that the substantive medical records of anyone other than Mary are not relevant, material, or discoverable.

Legal Principles
The general scope of discovery is found in La. C.C.P. art. 1422, which provides in pertinent part:
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, *440 description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
In order to obtain discovery of medical records, a party must comply with La. C.C.P. art. 1465.1, which states in pertinent part:
A. Any party may serve upon the plaintiff or upon any other party whose medical records are relevant to an issue in the case a request that the plaintiff or other authorized person sign a medical records release authorizing the health care provider to release to the requesting party the medical records of the party whose medical condition is at issue. The release shall be directed to a specific health care provider, shall authorize the release of medical records only, and shall state that the release does not authorize verbal communications by the health care provider to the requesting party.
Regarding the duty of a health care provider to respond to a request for medical records, La. R.S. 13:3715.1 provides in pertinent part:
B. The exclusive method by which medical, hospital, or other records relating to a person's medical treatment, history, or condition may be obtained or disclosed by a health care provider, shall be pursuant to and in accordance with the provisions of R.S. 40:1299.96 or Code of Evidence Article 510, or a lawful subpoena or court order obtained in the following manner:
(1) A health care provider shall disclose records of a patient who is a party to litigation pursuant to a subpoena issued in that litigation, whether for purposes of deposition or for trial and whether issued in a civil, criminal, workers' compensation, or other proceeding, but only if: the health care provider has received an affidavit of the party or the party's attorney at whose request the subpoena has been issued that attests to the fact that such subpoena is for the records of a party to the litigation and that notice of the subpoena has been mailed by registered or certified mail to the patient whose records are sought, or, if represented, to his counsel of record, at least seven days prior to the issuance of the subpoena; and the subpoena is served on the health care provider at least seven days prior to the date on which the records are to be disclosed, and the health care provider has not received a copy of a petition or motion indicating that the patient has taken legal action to restrain the release of the records. If the requesting party is the patient or, if represented, the attorney for the patient, the affidavit shall state that the patient authorizes the release of the records pursuant to the subpoena. No such subpoena shall be issued by any clerk unless the required affidavit is included with the request.
. . . .
(5) A court shall issue an order for the production and disclosure of a patient's records, regardless of whether the patient is a party to the litigation, only: after a contradictory hearing with the patient, or, if represented, with his counsel of record, or, if deceased, with those persons identified in Paragraph (3) hereof, and after a finding by the court that the release of the requested information is proper; or with consent of the patient.
Medical records are generally privileged. La. C.E. art. 510 sets forth not *441 only the privilege, but also certain exceptions. That statute provides in pertinent part:
B. (1) General rule of privilege in civil proceedings. In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives.
(2) Exceptions. There is no privilege under this Article in a noncriminal proceeding as to a communication:
(a) When the communication relates to the health condition of a patient who brings or asserts a personal injury claim in a judicial or worker's compensation proceeding.
. . . .
(c) When the communication is relevant to an issue of the health condition of the patient in any proceeding in which the patient is a party and relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which a party deriving his right from the patient relies on the patient's health condition as an element of his claim or defense.
. . . .
(j) When disclosure of the communication is necessary for the defense of the health care provider in a malpractice action brought by the patient.
. . . .
F. Medical malpractice. (1) There shall be no health care provider-patient privilege in medical malpractice claims as defined in R.S. 40:1299.41 et seq. as to information directly and specifically related to the factual issues pertaining to the liability of a health care provider who is a named party in a pending lawsuit or medical review panel proceeding. (2) In medical malpractice claims information about a patient's current treatment or physical condition may only be disclosed pursuant to testimony at trial, pursuant to one of the discovery methods authorized by Code of Civil Procedure Article 1421 et seq., pursuant to R.S. 40:1299.96 or R.S. 13:3715.1.
The principal purpose of the health care provider-patient privilege is to encourage full disclosure by the patient of his or her condition in order to ensure proper diagnosis and treatment. Moss v. State, XXXX-XXXX (La.4/4/06), 925 So.2d 1185. The privilege seeks to secure the patient from disclosure, in court, of potentially humiliating, embarrassing or disgraceful information, or information that could be the basis for the patient's legal liability. Another rationale for the privilege is the recognition of a patient's interest in the privacy of therapeutic matters. Moss v. State, supra.
The patient for whom protection was intended by La. C.E. art. 510 is a person in need of medical care who might otherwise withhold relevant information for fear that it may later embarrass him or her or be used against the individual in legal proceedings. By definition, a "confidential communication" includes medical records generated in the course of obtaining advice, diagnosis, or treatment with respect to a particular health condition. La. C.E. art. 510(A)(8)(b). The privilege extended by the article may be claimed by the patient or by his or her legal representative. La. C.E. art. 510(D). Moss v. State, supra.
The rule barring discovery of disclosures to health care providers is not a rule of incompetency of evidence, which serves the end of protecting an adverse party against unreliable or prejudicial testimony. *442 It is a rule of privilege protecting the extrinsic interest of the patient and designed to promote health, not truth. As a privilege that benefits the patient, the privilege bestowed by La. C.E. art. 510 may be waived by the patient (or the individual to whom the privilege applies.) This waiver may be express or implied. Moss v. State, supra.
In Moss v. State, supra, the Louisiana Supreme Court considered whether a health care provider could be compelled to disclose the medical records of a nonparty to a lawsuit. The court construed La. R.S. 13:3715.1, and found that the trial court should have held a contradictory hearing to decide whether disclosure was proper on a case by case basis. Because the present case does not deal with introduction of medical records of nonparties, Moss v. State, supra, is not directly on point. However, it does provide insight and guidance into the disposition of the present case. Basically, as in Moss v. State, supra, the matter currently before the court involves a consideration of the proper scope of discovery to be allowed. This requires a balancing of the protection of the privacy interests of the plaintiffs with the defendant's ability to defend against the malpractice charges.
In the Moss case, the supreme court was also faced with balancing the various interests involved. The court observed that the balancing of interests is not a unique task for a court, which engages in similar exercises in the context of determining whether otherwise relevant evidence should be excluded because its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. La. C.E. art. 403. The task involves recognizing and balancing competing interests: those protected by shielding the evidence sought with those advanced by disclosure. Moss v. State, supra.
The Moss court noted that each case must be resolved on its own facts. Nevertheless, there are guidelines the courts should follow in assessing the propriety of disclosure in any particular case. In light of the significant policy reasons supporting the legislatively established health care provider-patient privilege and the constitutional dimensions of the privacy expectations protected thereby, the burden is on the party seeking to overcome the privilege to establish the propriety of disclosure. In light of those same considerations, the privilege should not be subject to casual breach by every litigant in single-minded pursuit of the last piece of evidence which may marginally contribute to his or her case. There should be a substantial showing of relevance and need, i.e., lack of ability to obtain evidence elsewhere, by the party seeking disclosure. Further, any exception to the privilege should be narrowly tailored and should extend only to information necessary and relevant to the condition relied on as a defense or claim. In other words, it is "proper" to disregard the privilege only to the limited extent necessary to access information which is directly related to determining the truth. Following these guidelines, the courts can ensure that both the privacy interests of the patient and the due process rights of the litigant seeking disclosure are respected. Moss v. State, supra.

Discussion
The defendant has asked for all information regarding medical reports, records, bills, x-rays, diagnostic test results, documents, or tangible items touching upon consultations with any health care provider who has treated any of the plaintiffs for any reason at any time. Such a request *443 is overly broad and will undoubtedly retrieve information completely irrelevant to the plaintiffs' claims. Such a request could conceivably result in production of records dealing with a tonsillectomy 30 years ago. This information would have no relevance to the issues presently before the court.
In such matters, the trial court may limit the scope of discovery. La. C.C.P. art. 1426 provides:
A. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(1) That the discovery not be had.
(2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place.
(3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery.
(4) That certain matters not be inquired into, or that the scope of the discovery be limited to certain matters.
Certainly this case demands extensive pruning of the discovery tree whose branches, at present, encroach into irrelevant areas. The trial court recommended to the parties that they might work together to limit the scope of discovery and offered to provide guidance in that exercise. Apparently, the parties did not reach a compromise. The trial court then signed an order granting the defendant's motion to compel and the plaintiffs were ordered to respond to the defendant's interrogatories and request for production of documents without any limitations. As a result, the plaintiffs filed the present writ application. Therefore, this court must now limit discovery, balancing the privacy interests of the plaintiffs and the due process rights of the defendant.
In the present case, some of the plaintiffs' medical records are subject to exceptions to the privilege found in La. C.E. art. 510. By claiming mental anguish damages resulting from the loss of the decedent, the plaintiffs rely upon their mental conditions as part of their claims. Records of mental health treatment by mental health care professionals, such as psychiatrists and psychologists, are discoverable for defense against an element of the plaintiffs' claims. The defendant may also obtain discovery of the records of any health care provider who treated or prescribed medication to the plaintiffs for mental health issues such as depression and anxiety. However, discovery is limited to records pertaining to mental health issues.
Another issue raised in this matter is whether Dr. Bailey was the primary care physician for the decedent. The plaintiffs claim that their entire family viewed Dr. Bailey to be the primary care physician for their family. Therefore, they contend that Mary, the decedent, must also have viewed him as her primary care physician. This argument is tenuous at best. If the plaintiffs continue to assert this argument, then their treatment history is discoverable, in part.
In order to protect the plaintiffs' privacy and to also allow the defendant discovery of information which is relevant, we limit discovery on the primary care physician issue. For those years in which the decedent was 45 years old until her death, the plaintiffs shall furnish to the defendant a list of their health care providers, dates of treatment, and a general description *444 of the treatment. The defendant is not entitled to wholesale discovery of these medical records. If it appears from this information that another physician was probably the primary care physician for any of the plaintiffs, discovery shall be limited to that physician's records for the time periods noted above. We observe that the best evidence of whether the family considered Dr. Bailey to be their primary care physician would be Dr. Bailey's own records.

CONCLUSION
For the reasons stated above, we affirm in part and reverse in part the ruling of the trial court allowing the defendant, Dr. Donovan W. Bailey, unlimited discovery of the entirety of the plaintiffs' medical records. The defendant's request for answers to interrogatories and for production of documents will be limited according to the provisions set forth above. The case is therefore remanded to the trial court for further proceedings consistent with this opinion. Costs in this court are assessed one-half to the plaintiffs and one-half to the defendant.
AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] The defendant recognizes that the plaintiffs have responded to Interrogatory No. 15 and he does not seek supplementation of that response.