# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 12-1337

STATE OF LOUISIANA

VERSUS

JOSEPH ANTON CHEHARDY, JR.

**\*\*\*\*\*\*\*\*\***

**APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 303,155
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE**

**\*\*\*\*\*\*\*\*\***

**JAMES T. GENOVESE
JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, James T. Genovese, and John E. Conery, Judges.

**CONVICTIONS AFFIRMED;
SECOND DEGREE MURDER SENTENCE AFFIRMED;
AGGRAVATED BATTERY SENTENCES VACATED;
MATTER REMANDED FOR RESENTENCING
ON AGGRAVATED BATTERY CONVICTIONS
WITH INSTRUCTIONS.**

Edward K. Bauman
Louisiana Appellate Project
Post Office Box 1641
Lake Charles, Louisiana 70602
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:
    Joseph Anton Chehardy, Jr.

**Joseph Anton Chehardy, Jr.**
**#598821**
**Tu-Lower Tier - C1**
**Louisiana State Penitentiary**
**Angola, Louisiana  70712**
**(225) 655-4411**
**In Proper Person**

**James C. Downs**
**District Attorney — Ninth Judicial District**
**Numa V. Metoyer, III**
**Assistant District Attorney**
**Post Office Drawer 1472**
**Alexandria, Louisiana  71309**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**GENOVESE, Judge.**

In this criminal case, Defendant, Joseph Anton Chehardy, Jr., appeals his convictions and sentences for second degree murder and two counts of aggravated battery. In his assignment of error, Defendant's appellate counsel alleges insufficiency of the evidence. Defendant has also filed a pro se brief with assignments of error, alleging ineffective assistance of counsel, defective voir dire, illegal sentence, failure of notice of grand jury proceedings, and trial court error in denying his motions to suppress statements and quash the indictment. For the following reasons, we affirm Defendant's conviction and sentence for second degree murder; we affirm Defendant's conviction on both counts of aggravated battery; we vacate Defendant's sentence on both counts of aggravated battery; and, we remand the matter to the trial court for resentencing on both counts of aggravated battery with instructions relative to post-conviction relief.

## FACTS

The record indicates that two deputies, Barry McCain and Steven Logsdon, both with the Rapides Parish Sheriff's Office, responded to a domestic disturbance at Defendant's home. After shooting his wife several times at their home, Defendant attempted to escape by running down the two deputies with his truck. As they stood in the driveway, Defendant, ignoring their calls for him to approach them with his hands up, entered his truck and sped directly towards the two men, forcing them to leap aside to avoid serious bodily injury and/or death. Defendant's wife died as a result of the gunshot wounds.

## PROCEDURAL HISTORY

Defendant was indicted on July 29, 2010, on one count of second degree murder, a violation of La.R.S. 14:30.1, and on two counts of attempted first degree murder, violations of La.R.S. 14:27 and 14:30(A)(2). Jury trial commenced on

May 15, 2012, and, on May 17, 2012, Defendant was found guilty of one count of second degree murder and two counts of aggravated battery, violations of La.R.S. 14:34.

Defendant was sentenced on May 25, 2012, to life imprisonment without the benefit of parole, probation, or suspension of sentence on the conviction of second degree murder and to ten years imprisonment at hard labor on each count of aggravated battery, to be served consecutively with each other and with the life sentence. He filed a Motion to Reconsider Sentence, which was denied without a hearing.

## ASSIGNMENTS OF ERROR

*Assignment of Error by Defendant's Appellate Counsel:*

Defendant's appellate counsel asserts that "[t]he trial court erred in finding Joseph Chehardy guilty of two counts of aggravated battery."

*Pro Se Assignments of Error:*

1. The trial court erred in imposing an unservable punishment, violating La. Constitution Article 1, § 20.

2. The trial court erred in failing to protect the appellant's right to the priviledge [sic] of self-incrimination, thereby violating La.Const. Articles 1, § 13 and 1, § 16.

3. The appellate counsel for Joseph Chehardy violated La. Const. Articles 1, §§ 2, 3 when he chose not to appeal appellant['s] conviction and sentence for La. R.S. 14:30.1.

4. The trial court erred by failing to send notice to defense counsel [of] the meeting of the grand jury, violating La. Const. Articles 1, §§ 2, 3 and the 6th Amendment to the U.S. Constitution.

5. The trial court erred when violating La. Con. [sic] Article 1 § 16, by allowing the prosecution team to challenge the jurors and make strikes so that as many women as possible would fill the seats against appellant.

6. The defense counsel, Mr. Joseph Kutch, did not effectively assist his client, the appellant, according to the strict demands of the 6th

2

Amendment to the U.S. Constitution and case law standard [*Strickland v. Washington*].

## <u>ERRORS PATENT</u>

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find two errors patent.

First, Defendant's sentences for aggravated battery are indeterminate. Louisiana Revised Statutes 14:34 carries a term of imprisonment for not more than ten years with or without hard labor. In sentencing Defendant, the court stated:

> [T]he sentence of the Court is you are to serve life imprisonment, at hard labor, with Louisiana Department of Corrections. That sentence is without benefit of probation, parole or suspension of sentence. On the aggravated batteries of the police officers, you are to serve ten years on each of those sentences. Those sentences are to be concurrent with each other. I'm sorry. They're to be consecutive with each other. That's Count 2 and 3. Count 2 is 10; Count 3 is 10. They're consecutive with each other and consecutive with Count 1, which is the life imprisonment. So that's 120 years.[1]

Although the court minutes indicate the two sentences for aggravated battery were imposed at hard labor, the transcript does not reflect this. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62.

The trial court's failure to specify whether the sentences for aggravated battery were to be served with or without hard labor rendered those sentences indeterminate, thus requiring that the sentences be vacated and the case remanded for resentencing with the trial court being instructed to specify whether the sentences are to be served with or without hard labor. *State v. Matthew*, 07-1326

---

[1] Initially, we note the trial court's concluding statement that a life sentence plus two consecutive ten-year sentences totals 120 years is incorrect. However, in this case, it has no impact on the sentence. There is no question that the court imposed a life sentence plus two ten-year sentences to run consecutively. Additionally, the 120-year sentence is not mentioned in either the court minutes or the commitment order.

3

(La.App. 3 Cir. 5/28/08), 983 So.2d 994, *writ denied*, 08-1664 (La. 4/24/09), 7 So.3d 1193.

Second, we note that the trial court incorrectly advised Defendant of the time limitation for filing an application for post-conviction relief. Defendant was informed that he has "two years to file an Application for Postconviction Relief once [his] appeal . . . the delays for the appeal have [been] denied." Louisiana Code of Criminal Procedure Article 930.8 provides that Defendant has "*two years after the judgment of conviction and sentence has become final*" to seek post-conviction relief. Therefore, we direct the trial court to correctly inform Defendant of the provisions of La.Code Crim.P. art. 930.8 at resentencing.

## LAW AND DISCUSSION

### *ASSIGNMENT OF ERROR BY APPELLATE COUNSEL*

Defendant contends that there was insufficient evidence to sustain his convictions for aggravated battery. Defendant argues that although actual injury is not required, a necessary element of the offense of aggravated battery is physical contact with the victim, and that element is missing.

The analysis for a claim of insufficient evidence is well-settled:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Mussall*, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. *State v. Silman*, 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. *State v. Bordenave*, 95-2328 (La.4/26/96), 678 So.2d 19, 20. It is not the function of an appellate court to assess credibility or re-weigh the evidence. *Id.*

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86.

4

Defendant was charged with two counts of attempted first degree murder for attempting to run down the two deputies. First degree murder is defined as the killing of a human being "[w]hen the offender has a specific intent to kill or to inflict great bodily harm upon a fireman, peace officer, or civilian employee of the Louisiana State Police Crime Laboratory or any other forensic laboratory engaged in the performance of his lawful duties[.]" La.R.S. 14:30(A)(2). The statutory definition of an "attempt" to commit an offense is as follows:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La.R.S. 14:27(A).

Battery is defined as "the intentional use of force or violence upon the person of another[,]" and the offense of aggravated battery is a battery committed with a "dangerous weapon." La.R.S. 14:33 and La.R.S. 14:34. The offense of aggravated battery requires "physical contact whether injurious or merely offensive." *State v. Dauzat*, 392 So.2d 393, 396 (La.1980).

Deputies McCain and Logsdon testified at trial. They both testified that they were close to Defendant's house when they were separately dispatched to a domestic disturbance, so they arrived fairly quickly and simultaneously. Deputy McCain stated he was advised that there were shots fired. When he arrived, Deputy Logston was already out of his vehicle. Deputy McCain said he parked his vehicle on the roadway and walked to the driveway. Although it was early evening, there was enough lighting in the area to see what was happening. Because there was a report of a gun involved, he took his M16 rifle with him. As he approached the driveway, he heard Deputy Logsdon issuing commands for Defendant to walk towards him, to come and talk to him, and to show his hands.

5

Defendant ignored Deputy Logsdon's commands and got into his truck. He backed the truck around so that it was pointed out towards the roadway. Deputy McCain stated that he and Deputy Logsdon stood directly in the driveway in front of the truck, thinking that if they were standing in the driveway, Defendant would see them and automatically stop. He described two posts that were at the end of the driveway and fences along both sides, so there was no room for Defendant to swerve around them to get out of the driveway onto the roadway. However, Defendant gunned the engine and raced down the driveway. Deputy McCain testified that he was in uniform, with a rifle in his hand, and both police units had lights still flashing. He further stated that Defendant looked directly at them as he sped forward and that Defendant sped by so fast that he actually stumbled backwards, which saved him from being hit. He said he did not know whether Defendant had hit Deputy Logsdon at that point.

Deputy Logsdon testified as follows:

We had our flashlights on him, and we're just telling him, giving him commands to show his hands and come talk to us. He ignored all of our commands[,] and he got into his vehicle. We both walked the fence line, and how it's set up, there is a fence line facing the street and there are two posts to - - for the driveway comes out [sic]. We walked down in between the posts and the driveway[,] thinking this will stop him. He can't, you know, [because] we're blocking his only way of getting out. He turned his truck and faced us. We had our lights on, but also [there] was another light that kind of illuminated the street area or the driveway area. We gave him again [sic] verbal commands to shut down the vehicle and get out and talk to us. I remember looking at him and, and just - - his expression changed from where it - - to me it was a thing of him making a decision[,] and then the gravel started going. He stepped on the gas[ ] and just started coming at us. At this . . .

Q. And was he coming at you at a high rate of speed?

A. Yes, a high rate of speed in a very short distance. At this time, I was thinking, I don't know if he's, if he's got the gun on him. I was on the driver's side door where his, his - - he was going to be on my side. I was thinking he could possible just shoot me. Also, he's just driving at me, and I got out of the way thinking if he has control of

6

this vehicle[,] it's very easy for him just to, you know, finish me off, just run me over. At that, at that point[,] I used judgment to fire my weapon. I fired it twice into the side of his, his truck, and he, he'd gone past us.

We agree with Defendant that contact is a necessary element of aggravated battery and that contact is missing from the State's evidence. Neither deputy testified they were touched by Defendant's vehicle or any other dangerous instrumentality controlled by Defendant. However, in this case, while Defendant was charged with attempted first degree murder, he was convicted of the *responsive verdict* of aggravated battery. Aggravated battery is a legislatively authorized responsive verdict to attempted first degree murder. La.Code Crim.P. art. 814(A)(2). In cases where a jury returns a legislatively approved responsive verdict, it is common jurisprudence in Louisiana that, absent a contemporaneous objection to the inclusion of the responsive verdict in the instructions to the jury, the jurors have the right to compromise between the charged offense and a verdict of not guilty. *State ex rel. Elaire v. Blackburn*, 424 So.2d 246 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983); *State v. Charles,* 00-1611 (La.App. 3 Cir. 5/9/01), 787 So.2d 516, *writ denied,* 01-1554 (La. 4/19/02), 813 So.2d 420; *State v. Templet*, 05-2623 (La.App. 1 Cir. 8/16/06), 943 So.2d 412, *writ denied,* 06-2203 (La. 4/20/07), 954 So.2d 158.

In *State v. Alsay*, 11-562 (La.App. 5 Cir. 12/13/11), 81 So.3d 145, *writ denied*, 12-1041 (La. 9/21/12), 98 So.3d 335, the defendant was charged with one count of attempted first degree murder and one count of attempted second degree murder, but was convicted of two counts of aggravated battery. On appeal, he argued the evidence was insufficient to support the aggravated battery convictions, because there was no evidence that either victim was actually struck by a bullet from the gun he had discharged in their direction, nor was either victim subjected

7

to any battery by the use of any other deadly weapon.  In *Alsay*, the defendant did not object to the inclusion of the responsive verdict of aggravated battery in the jury instructions.  The fifth circuit affirmed the convictions and noted:

> In *Blackburn,* 424 So.2d at 251-52, the supreme court explained:
>
>> It would be unfair to permit the defendant to have the advantage of the possibility that a lesser "compromise" verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object.
>>
>> Accordingly, defendant is entitled to a reversal of his conviction only if the evidence is insufficient under the *Jackson* standard to support a conviction of the charged offenses, attempted first and attempted second degree murder, regardless of whether the responsive verdict is supported by the evidence.  [*State v.*] *Austin,* [04-993 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, *writ denied,* 05-830 (La. 11/28/05)].

*Id.* at 148-49.

In *State v. Jones*, 03-180 (La.App. 3 Cir. 9/10/03), 855 So.2d 408, *writ denied,* 04-409 (La. 1/14/05), 889 So.2d 262, this court affirmed the defendant's conviction for attempted second degree murder after, in an attempt to escape pursuit by a police officer, he backed his vehicle at high speed towards the officer, forcing him to jump onto the trunk of the police unit to avoid being struck by the vehicle.  In *Jones*, the State had to prove that the defendant had the specific intent to kill the officer and committed an overt act in furtherance.  *See State v. Williams*, 95-879 (La.App. 3 Cir. 1/31/96), 670 So.2d 414.

Furthermore, in *Jones*, 855 So.2d at 411-12, this court noted:

> "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). "[S]pecific criminal intent need not be proven as fact but may be inferred from the circumstances of the case and actions of the defendant." *State v. Robertson,* 98-883, p. 6 (La.App. 3 Cir. 12/9/98), 723 So.2d 500, 504 (citations omitted), *writ denied*, 99-0658 (La.6/25/99), 745 So.2d 1187.

8

In the current case, both deputies testified that Defendant had no avenue of escape other than driving the truck directly towards them and out of the driveway between the two posts bordering the end of the driveway. Both deputies testified they were very visible and that Defendant looked directly at them when he gunned the vehicle and accelerated at a fast rate of speed towards them. In this case, Defendant's actions exhibited an intent to kill the deputies in order to facilitate his escape. As noted above, specific intent may be established by the circumstances surrounding an accused's actions. Because the evidence satisfied the elements of attempted first degree murder, we find that the jury's decision to "compromise" the verdict was lawful under the circumstances. Furthermore, a review of the record shows that Defendant never objected to the inclusion of the responsive verdict of aggravated battery in the jury's instructions. Accordingly, this assignment of error is without merit.

## PRO SE ASSIGNMENT OF ERROR NUMBER ONE

Defendant argues that the sentences imposed are "unservable." He does not explain exactly what he means other than he alleges that the sentences are constitutionally excessive.

As discussed in the Errors Patent section of this opinion, the two ten-year terms of imprisonment imposed on the convictions for aggravated battery are to be vacated; therefore, the issue of the excessiveness of those sentences is moot. Regarding the life sentence imposed on the conviction for second degree murder, the conviction mandates a punishment of life imprisonment without the benefit of parole, probation, or suspension of sentence. La.R.S. 14:30.1(B).

> [W]here there is a constitutional mandatory sentence, there is no need for the trial court to justify, under Article 894.1, a sentence it is legally required to impose. In addition, to rebut the presumption that the mandatory sentence is constitutional, the defendant must clearly and convincingly show that because of unusual circumstances this

9

defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. In this case, the defendant has not sufficiently demonstrated he is the "exceptional" defendant for which downward departure from the statutory minimum sentence is required.

Furthermore, arguments that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment contained in the Louisiana constitution have been repeatedly rejected. *State v. Parker*, 416 So.2d 545 (La.1982); *State v. Brooks*, 350 So.2d 1174 (La.1977); *State v. Thornton*, 36,757 (La.App.2d Cir.01/29/03), 836 So.2d 1235, *writ denied*, 2003-0861 (La.10/31/03), 857 So.2d 474.

*State v. Gill,* 40,915, pp. 7-8 (La.App. 2 Cir. 5/17/06), 931 So.2d 409, 413, *writ denied*, 06-1746 (La. 1/26/07), 948 So.2d 165. *See also State v. Cornejo-Garcia*, 11-619 (La.App. 5 Cir. 1/24/12), 90 So.3d 458.

In this case, Defendant makes no showing that he is exceptional and, therefore, entitled to a downward departure from the mandatory minimum sentence. The sentence is not illegal, grossly disproportionate to the severity of the offense, nor shocking to the sense of justice. This assignment of error is, therefore, without merit.

*PRO SE ASSIGNMENT OF ERROR NUMBER TWO*

In this assignment of error, Defendant argues that the trial court erred when it permitted certain witnesses to repeat statements that Defendant made to them regarding the shooting death of his wife. In brief, Defendant does not make a specific argument; he simply states that his right against self-incrimination was violated by the admission of the statements. He references a page number in the trial transcript wherein trial counsel objected, pursuant to La.Code Evid. art. 510, to the testimony of a witness, Paul Quinney, and the testimonies of three other individuals who encountered Defendant at the Veterans Administration (VA) hospital and at Cabrini Hospital's emergency intake.

10

Mr. Quinney testified that he was an administrative officer at the VA hospital. He stated that he was at the main desk on May 19, 2010, when Defendant came into the hospital with his infant son and stated that "he wanted to see a psych doctor" for an evaluation. When he explained to Defendant that he could not just check into the psych ward without a doctor's authorization and that it had to be done in the emergency room area, Defendant told him that he had been in a shoot-out with the police and had been shot and that he had shot his wife in her "private" and in the head. Mr. Quinney further explained that according to hospital procedure, when a person came to the hospital with a stab or gunshot wound, the VA police were to be summoned.

Anthony Francisco and Shawn Stephens were the security officers Mr. Quinney called. They both testified that Defendant volunteered information as they were attempting to ascertain the problem and to secure the infant, who was only in a diaper and barefooted. Defendant told them that he thought his wife had been cheating on him and that, besides being shot by some "dirty cops," he had also shot his wife.

Finally, Christopher Washington, an emergency intake technician at Cabrini Hospital, testified that as he was prepping Defendant in the emergency room, Defendant stated that his wife had been cheating on him, "so he unloaded a whole clip on her ass."

At trial, defense counsel argued that the above statements qualified under testimonial privileges and that Defendant did not waive the privilege. Louisiana Code of Evidence Article 510, the health care provider-patient privilege, in pertinent part, provides:

11

A. Definitions. As used in this Article:

(1) "Patient" is a person who consults or is examined or interviewed by another for the purpose of receiving advice, diagnosis, or treatment in regard to that person's health.

(2) "Health care provider" is a person or entity defined as such in R.S. 13:3734(A)(1), and includes a physician and psychotherapist as defined below, and also includes a person who is engaged in any office, center, or institution referred to as a rape crisis center, who has undergone at least forty hours of sexual assault training and who is engaged in rendering advice, counseling, or assistance to victims of sexual assault.

(3) "Physician" is a person licensed to practice medicine in any state or nation.

. . . .

(6) "Representative" of a physician, psychotherapist, or other health care provider is:

(a) A person acting under the supervision, direction, control, or request of a physician, psychotherapist, or health care provider engaged in the diagnosis or treatment of the patient.

(b) Personnel of a "hospital," as defined in R.S. 13:3734(A)(3), whose duties relate to the health care of patients or to maintenance of patient records.

(7) The definitions of health care provider, physician, psychotherapist, and their representative include persons reasonably believed to be such by the patient or his representative.

(8)(a) "Confidential communication" is the transmittal or acquisition of information not intended to be disclosed to persons other than:

(i) A health care provider and a representative of a health care provider.

(ii) Those reasonably necessary for the transmission of the communication.

(iii) Persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist.

(iv) A patient's health care insurer, including any entity that provides indemnification to a patient.

(v) When special circumstances warrant, those who are present at the behest of the patient, physician, or psychotherapist and are reasonably necessary to facilitate the communication.

(b) "Confidential communication" includes any information, substance, or tangible object, obtained incidental to the communication process and any opinion formed as a result of the consultation, examination, or interview and also includes medical and hospital records made by health care providers and their representatives.

(9) "Health condition" is a physical, mental, or emotional condition, including a condition induced by alcohol, drugs, or other substances.

. . . .

C. (1) General rule of privilege in criminal proceedings. In a criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself, his representative, and his physician or psychotherapist, and their representative.

At trial, during the discussion on whether the above statements were privileged, the record indicates that Defendant just wanted to check into the psych ward for evaluation, that he never asked for treatment from the VA hospital for the gunshot wound, and that he was not questioned by the two security guards. During arguments, Defendant cited *Moss v. State*, 05-1963, p. 6 (La. 4/4/06), 925 So.2d 1185, 1191, and the trial court cited *Prine v. Bailey*, 42,282, p. 9 (La.App. 2 Cir. 8/15/07), 964 So.2d 435, 441, both for the language: "The principal purpose of the healthcare provider-patient privilege is to encourage full disclosure by the patient of his or her condition in order to ensure the proper diagnosis and treatment."

The trial court denied Defendant's requests to find the statements privileged primarily for the reason that Defendant had volunteered the information to everyone who would listen to him about how his wife was unfaithful and that he had shot her. Furthermore, the trial court noted that this random dissemination of information indicated that he did not, at the time, intend for the information to be

13

privileged. We agree with the trial court, particularly in the case of Mr. Quinney and the two security officers. Defendant went to the main desk and asked to be admitted to the psych ward; he did not ask to be treated for the gunshot wound to his leg. While these witnesses may have been "representatives" or "personnel" of the hospital to some degree, the VA hospital was not Defendant's health care provider in this case. After volunteering the information to these three persons, he repeated the story again to a Pineville police officer, Detective Chapelle, who had responded to the two security officers' call, both before Defendant was *Mirandized* and after.

In *State v. Williams,* 01-944 (La.App. 1 Cir. 12/28/01), 804 So.2d 932, *writ denied*, 02-399 (La. 2/14/03), 836 So.2d 135, the first circuit did not find the statements the defendant made to his doctor in the emergency room privileged when the statements were made in front of the police officer who took him to the hospital for treatment and stood five feet away. The first circuit noted:

> Insofar as pertinent herein, [La.Code Evid. art.] 510 A(8)(a) defines a confidential communication as one involving the transmittal of "information not intended to be disclosed" to persons other than certain delineated individuals involved in a patient's diagnosis and treatment.

> On appeal, defendant argues the record does not support the trial court's conclusion that defendant could not have intended his statements to be confidential because he knew Officer Reed was present in the emergency room when he made the statements. However, we note that Officer Reed testified he went into the emergency room with defendant and stood in the examining room only five to six feet away from him while Dr. Broussard spoke to defendant. There also was testimony that defendant was alert and aware of his surroundings at the time. Under these circumstances, the trial court's conclusion appears to be supported by the record.

*Id*. at 946-47.

In this case, Defendant was not treated at the VA hospital; however, he was treated at Cabrini Hospital, and Christopher Washington was an emergency intake

14

technician. Mr. Washington testified that he was prepping Defendant for treatment when Defendant made the statement that he had shot his wife. Mr. Washington could qualify as a representative of Defendant's health care provider in this case, and the statement, under normal circumstances, could have been privileged. However, in *Williams*, the first circuit also stated:

> Nevertheless, even if the trial court erred in this respect, the motion to suppress was properly denied on the alternate basis that, by raising the issue of his sanity at the time of the offense, defendant impliedly waived the physician-patient privilege as to statements he made to Dr. Broussard. *See* La.Code Evid. art. 510 C(2)(a). These statements, made shortly after the offense, were germane to the issue of defendant's mental condition since they tended to show he was alert, coherent, responsive, and able to give details of the incident at that time. *See State v. Berry*, 324 So.2d 822, 827-28 (La.1975), *cert. denied*, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976); *State v. Aucoin*, 362 So.2d 503, 505 (La.1978); *State v. Brown*, 619 So.2d 692, 695-96 (La.App. 4th Cir.1993). Moreover, any error in admitting the testimony regarding defendant's responses to Dr. Broussard was harmless error beyond a reasonable doubt in view of the fact that defendant repeated the substance of those responses in subsequent statements he made to both Officer Reed and Detective Graham. *See* La.Code Crim.P. art. 921.

*Id.* at 947.

In this case, even if the trial court erred concerning the testimony given by Mr. Washington, as in *Williams,* the error was harmless in that Defendant had repeated the statement that he had shot his wife to several people not involved with treatment or diagnosis of his health care problem and to the police before and after he was *Mirandized*. Therefore, we find no merit to this assignment of error.

### PRO SE ASSIGNMENT OF ERROR NUMBER THREE

Defendant argues that appellate counsel was ineffective because he did not challenge the sufficiency of the second degree murder conviction and the sentence. Defendant's argument consists of the following:

> Appellant, Joseph Chehardy, is dumbstruck at how simple it would be to raise issues to protect his appeal as of right. Because Mr. Bauman could not see his inadvertence is going to cause a violation, he has

thus violated the extrinsic standards of the due process of law. ([La.Code Crim.P. art. 912(C)(1)] supports appellant's claim of ineffective assistance of the appointed appellate counsel)[.] [P]lease find Mr. Bauman in contempt.

Defendant makes no arguments as to what elements of the offense of second degree murder were not proven by the State. Considering that Defendant confessed he shot his wife in the head and in the "private" and that there was testimony given at trial that the "clip" full of gunshot wounds were responsible for her death, it is highly likely the evidence was more than sufficient. Defendant fails to show how appellate counsel in this case was deficient in his performance or representation of his interests.

With regard to the mandatory life sentence, as noted in the above pro se assignment of error, Defendant failed to show that he was entitled to a reduction of the sentence. Therefore, there is no merit to this assignment of error.

## PRO SE ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth assignment of error, Defendant asserts that the trial court erred when it denied his motion to quash the indictment for failure to send defense counsel notice that the "True Bill was returned on July 29, 2010[,] and an arraignment set for August 6, 2010, all of which counsel was not advised until he happened to be in Court on other matters." In brief, Defendant argues that "[i]t is mandated in trial court procedure that the trial court send notice to counsel as when the meeting of the grand jurors take[s] place." However, Defendant does not source the "mandate," nor do we find such a rule regarding same. The motion filed on September 13, 2010, states: "Counsel shows that his client has obvious mental problems that the State knew of or should have known of and that any notice to the client by the State was not forwarded to counsel and should not be deemed as to amount to constructive notice to counsel." Whereas Defendant evidently received

16

notice and defense counsel does not show that he had been appointed to represent Defendant at the time, there is no merit to this assertion of error.

*PRO SE ASSIGNMENT OF ERROR NUMBER FIVE*

Defendant argues that the State erred, during *voir dire,* by using its peremptory challenges to exclude men from the jury in order to stack the jury panel with eight women "to fulfill the burden of proving [him] guilty" of murdering his wife. We note that the *voir dire* was not designated to be included in the record. While Defendant does not use the term, we must presume that he is referring to gender discrimination. The factors needed to show a prima facie case of gender discrimination in the jury selection are that the prosecutor's challenges were directed at a member of a cognizable group, that the challenges were peremptory rather than for cause, and finally, a defendant must show circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of being a member of that cognizable group. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712 (1986); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419 (1994); *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859 (1991); and *State v. Givens,* 99-3518 (La. 1/17/01), 776 So.2d 443. Furthermore, in *Batson*, 476 U.S. 79, the Supreme Court also noted that relevant facts or circumstantial evidence of discriminatory intent include proof of disparate impact and a pattern of strikes against jurors, as well as questions and statements made during *voir dire.*

In brief, Defendant refers to the Written Peremptory Challenges forms, which were included in the record, to support his case. While the *voir dire* transcript was not included in the record, we note that a very detailed minute entry of the *voir dire*, including the peremptory challenges, challenges for cause, and selection of the jury was included in the record, and there were no objections made

17

by Defendant to any of the peremptory challenges. Absent objections made at the time so that the trial court could have addressed the issue, Defendant cannot now appeal on this ground. "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." La.Code Crim.P. Art. 841(A).

## *PRO SE ASSIGNMENT OF ERROR NUMBER SIX*

Finally, Defendant argues that trial counsel gave ineffective assistance. He points out that "defense counsel presented no witnesses, no mental health records, no evidence of provocation or any other presentation when asked by the court." In *State v. Walton*, 11-1085, pp. 6-7 (La.App. 3 Cir. 4/4/12), 87 So.3d 328, 332-33, *writ denied,* 12-875 (La. 10/26/12), 99 So.3d 639, this court stated:

> The Sixth Amendment of the U.S. Constitution provides a defendant with assistance of counsel for his or her defense. *See also* La. Const. art. 1, § 13. According to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant seeking to establish ineffective assistance of counsel must prove that 1) the defense attorney's performance was deficient *and* that 2) the deficiency prejudiced the outcome of the trial.
>
> With regard to the question of whether the defense attorney's performance was deficient, "defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance." *State v. James*, 95-962, p. 5 (La.App. 3 Cir. 2/14/96), 670 So.2d 461, 465 citing *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) and *Strickland*, 466 U.S. 668, 104 S.Ct. 2052.
>
> Additionally, the defendant must demonstrate that the deficient assistance of counsel prejudiced his defense. *State v. Jones*, 33,657 (La.App. 2 Cir. 8/23/00), 765 So.2d 1191, *writ denied,* 00-2779 (La.6/29/01), 794 So.2d 825. In short, the errors must have been so serious as to deprive the defendant of a fair trial. *Id.*, citing *Strickland,* 466 U.S. 668, 104 S.Ct. 2052. It is not sufficient for a defendant to show that the complained-of error had some conceivable effect on the trial's outcome. *Id.* Rather, the defendant is required to establish that, but for the error, "there is a reasonable probability the outcome of the trial would have been different." *Id.* at 1199. *See also State v. Truehill,* 09-1546 (La.App. 3 Cir. 6/2/10), 38 So.3d 1246.

In this case, Defendant does not indicate what witnesses should have been presented or the substance of their testimony, whose mental health records should

have been produced and what those records would have established, what evidence of provocation was available, and how the evidence could have reasonably changed the outcome of the trial. Defendant has failed to show what errors defense counsel committed and how he was prejudiced by those errors. Therefore, we find no merit to this assignment of error.

## DISPOSITION

We affirm Defendant's conviction of second degree murder and the sentence imposed therefor. We likewise affirm Defendant's convictions for aggravated battery; however, Defendant's sentences for aggravated battery are vacated, and the case is remanded for resentencing with the trial court being instructed to specify whether the sentences are to be served with or without hard labor. Additionally, the trial court is directed to correctly inform the Defendant of the post-conviction relief provisions of La.Code Crim.P. art. 930.8 at resentencing.

**CONVICTIONS AFFIRMED;**
**SECOND DEGREE MURDER SENTENCE AFFIRMED;**
**AGGRAVATED BATTERY SENTENCES VACATED;**
**MATTER REMANDED FOR RESENTENCING**
**ON AGGRAVATED BATTERY CONVICTIONS**
**WITH INSTRUCTIONS.**